## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| IN RE: MALLINCKRODT PLC, *et al.*, | : | Chapter 11 |
| | : | |
| Debtors. | : | Case No. 20-12522-JTD |

| | | |
|---|---|---|
| ATTESTOR LIMITED and HUMANA INC., | : | |
| | : | |
| Appellants, | : | Civ. No. 22-215-TLA |
| v. | : | |
| | : | |
| MALLINCKRODT PLC, *et al.*, | : | |
| | : | |
| Appellees. | : | |

| | | |
|---|---|---|
| SANOFI-AVENTIS U.S. LLC, | : | |
| | : | |
| Appellant, | : | Civ. No. 22-216-TLA |
| v. | : | |
| | : | |
| MALLINCKRODT PLC, *et al.*, | : | |
| | : | |
| Appellees. | : | |

## <u>MEMORANDUM OPINION</u>

April 22, 2022
Wilmington, Delaware

AMBRO, UNITED STATES CIRCUIT JUDGE

Sanofi-aventis U.S. LLC ("Sanofi"), Attestor Limited, Avon Holdings I, LLC, and Humana Inc. (collectively, the "Appellants") appeal the Bankruptcy Court's confirmation of a Chapter 11 reorganization plan filed by pharmaceutical company Mallinckrodt plc and its affiliates (collectively, the "Debtors").  Before me now are Appellants' motions under Federal Rule of Bankruptcy Procedure 8007 to stay distributions to their claimant class— Class 6—pending their appeals.[1]  Because they have not shown a likelihood of irreparable harm, I deny the motions.

Irreparable harm is one of four factors relevant to the stay analysis.  The others are whether the movant is reasonably likely to succeed on the merits of its appeal, whether a stay would substantially harm other interested parties, and whether the public interest favors a stay.  *In re Revel AC, Inc.*, 802 F.3d 558, 568 (3d Cir. 2015).  Courts balance these factors such that "more of one excuses less of the other."  *Id.* at 570 (quoting *Mohammed v. Reno*, 309 F.3d 95, 101 (2d Cir. 2002)).  Still, an applicant cannot succeed without showing that it will suffer irreparable harm absent a stay.  *Id.* at 568.

A harm is "irreparable" for stay purposes when it "'cannot be prevented or fully rectified' by a successful appeal."  *Id.* (quoting *Roland Mach. Co. v. Dresser Indus.*, 749

---

[1] Attestor Limited and its affiliated entities, Avon Holdings and Humana Inc., have filed an appeal of the Debtors' reorganization plan, docketed at Civil Action No. 22-215.  Sanofi has filed a separate appeal, docketed at Civil Action No. 22-216.  Because these entities seek the same limited stay of the plan, and because I am denying their stay motions for the same reason, I address both motions in this memorandum opinion.

F.2d 380, 386 (7th Cir. 1984)).  Speculative harms are not enough: the movant "must 'demonstrate that irreparable injury is *likely* [not merely possible] in the absence of [a] [stay]." *Id.* at 569 (alterations in original) (emphasis in original) (quoting *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008)); *id.* (explaining that the harm must be "more apt to occur than not").  And "purely economic injur[ies], compensable in money," are also insufficient, except in those rare cases "where the potential economic loss is so great as to threaten the existence of the movant's business." *Id.* at 572 (quoting *Minard Run Oil Co. v. U.S. Forest Serv.*, 670 F.3d 236, 255 (3d Cir. 2011)).

Here, Appellants—each of which is a Class 6 general unsecured creditor—challenge the way in which the Class 6 recovery will be allocated and distributed under the Debtors' confirmed plan.  It requires the Debtors to deliver $135 million in cash plus certain non-cash assets to a trust for the benefit of Class 6.  The Official Committee of Unsecured Creditors ("UCC"), an appellee in these appeals, devised the plan's strategy for allocating that recovery to the various Class 6 subclasses.  It first estimated the share of each subclass based on (a) claim size, (b) the Debtor entities at which the claims were asserted, and (c) the relative value of those Debtor entities.  Most critically here, the UCC then designed an initial distribution scheme: when the plan goes into effect, approximately $94 million of the available cash will be distributed, with some subclasses receiving all (or more) of their estimated share while others must wait to recover fully until the non-cash assets are monetized.  Appellants belong to subclasses that will not receive their full estimated share in the initial distribution.

2

On appeal, Appellants argue (among other things) that the plan's allocation and distribution scheme inaccurately estimates the size of their claims and unfairly discriminates against their subclasses, leaving them to shoulder the risk associated with the non-cash assets. They seek bigger shares of the Class 6 recovery and a *pro rata* distribution of both the cash and the non-cash assets. They want, in short, more cash than they will receive in the initial distribution, which looks a lot like a purely economic injury.

Nevertheless, Appellants argue that the initial distribution could lead to irreparable harm. They suggest that if they are in fact entitled to more than what they'll get in that distribution, it may be difficult or impossible for them to recoup the disbursed funds. Only Attestor Limited offers any support for this assertion. It points to an unpublished opinion from this District holding that once a distribution is made, a party seeking to challenge that distribution "will have little or no recourse available to reclaim the funds." *In re Finova Grp., Inc.*, 2007 WL 3238764, at *2 (D. Del. Oct. 31, 2007). Notably, that case relies on out-of-circuit authority allowing a more relaxed irreparable harm showing than what is required in this Circuit. *See In re Focus Media Inc.*, 387 F.3d 1077, 1085–86 (9th Cir. 2004) (irreparable harm prong satisfied by the mere "possibility of irreparable injury"). I am reluctant to find *Finova* persuasive in any event, as neither it nor Appellants explain how the latter would be prevented from recovering the distributed cash should they win their appeals. I don't doubt that clawing back money could be a headache.[2] But "[m]ere

---

[2] In their reply brief, Attestor Limited, Avon Holdings, and Humana assert that Class 6 creditors will try to avoid any future disgorgement by relying on provisions in the plan and confirmation order stating that distributions under the plan are "final." Attestor Reply Br. 11–12. But they bear the burden of establishing the likelihood—rather than the mere

injuries, however substantial, in terms of money, time and energy necessarily expended in the absence of a stay, are not enough" to justify relief. *Sampson v. Murray*, 415 U.S. 61, 90 (1974). Appellants have not shown that they are likely to suffer a harm that cannot be rectified absent a stay of the initial distribution, especially where that distribution will not deplete all of the cash and assets available to them.

Appellants allude to the equitable mootness doctrine as supporting a finding of irreparable harm. Equitable mootness is a narrow, judge-made rule permitting an appellate court "to forbear deciding an appeal when to grant the relief requested will undermine the finality and reliability of consummated plans of reorganization." *In re Tribune Media Co.*, 799 F.3d 272, 277 (3d Cir. 2015). It applies only where the relief requested by an appellant will "fatally scramble the plan" or "significantly harm the interests of third parties who have justifiably relied on plan confirmation." *Id.* at 278. Appellants suggest that the UCC and the Debtors might raise the doctrine to try and prevent these cases from moving forward after plan consummation. But while this issue is not squarely before me, I do not see how equitable mootness would apply under the circumstances presented by these appeals. Thus, that concept also cannot serve as a basis for establishing irreparable harm. And without a showing of irreparable harm, a stay is inappropriate no matter how limited in scope or duration.

An appropriate order follows.

---

possibility—of irreparable harm. *See Winter*, 555 U.S. at 22. To repeat, that means they must show that irreparable harm is "more apt to occur than not." *Revel*, 802 F.3d at 569. Appellants offer no authority suggesting that the risk other creditors may defend any potential disgorgement action meets this standard.

4